```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
JOSEPH DESTEFANO,

                              Plaintiff,            MEMORANDUM
                                                    AND ORDER

              -against-                             05-CV-3534 (NGG)

MICHAEL J. ASTRUE, COMMISSIONER OF
SOCIAL SECURITY,

                              Defendant.
----------------------------------------------------------------x
```

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

By this action, plaintiff Joseph DeStefano ("plaintiff") sought judicial review of a final decision of the Commissioner of the Social Security Administration ("defendant") denying plaintiff's request for disability benefits. In an opinion entered on July 25, 2007, the Honorable Nicholas G. Garaufis reversed defendant's decision and remanded the case to the Social Security Administration ("SSA") to calculate the amount of benefits owed to plaintiff. Currently pending before this Court, on referral from Judge Garaufis, is plaintiff's application for legal fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), as well as fees pursuant to 42 U.S.C. § 406(b), the Social Security Act provision governing contingent-fee arrangements in federal court actions. Defendant objects to both fee amounts as excessive.

For the reasons set forth below, the Court reduces the amount of EAJA fees from $14,380.07 to $11,000.00, but declines to disturb the twenty-five percent contingency fee agreed upon by plaintiff and his counsel.

## BACKGROUND

In March 1991, plaintiff injured his back while on duty as a New York City Police Officer. See Declaration [of Christopher Bowes] in Support of Motion for Attorney Fees ("Bowes Decl.") at ¶ 3. Following the accident, plaintiff continued to work on a restricted basis, but the pain from his back injury and resulting arthritic condition led plaintiff to retire on October 30, 1992. See id. at ¶ 4. Almost two years later, on October 24, 1994, plaintiff entered into a contingent-fee agreement ("the 1994 Agreement") with the law firm of Seelig and Ungaro ("S&U"), which agreed to represent plaintiff in connection with an application for Social Security Disability ("SSD") benefits, in exchange for twenty-five percent of any past-due benefits that plaintiff received. See id. at ¶ 6. On November 15, 1994, S&U filed an application for SSD benefits on plaintiff's behalf. See id. at ¶ 7. This application was denied initially and on reconsideration, prompting plaintiff to request a hearing. See id. at ¶ 8.

On April 18, 2001, Administrative Law Judge Marilyn P. Hoppenfeld ("ALJ Hoppenfeld") held a hearing on plaintiff's claim.[1] See Bowes Decl. at ¶¶ 11-12. On March 28, 2003, ALJ Hoppenfeld issued a decision denying plaintiff's claim. See id. at ¶ 14. Specifically, ALJ Hoppenfeld concluded that plaintiff's condition failed to meet or equal any of

---

[1] Plaintiff had previously had a hearing before Administrative Law Judge Kenneth G. Levin ("ALJ Levin") on May 29, 1996. See Bowes Decl. at ¶ 8. Plaintiff appealed ALJ Levin's June 3, 1996 adverse decision to the SSA Appeals Council ("the Appeals Council"). See id. at ¶ 9. However, the administrative file that ALJ Levin had relied upon to reach his conclusion had been misplaced and, thus, could not be reviewed by the Appeals Council. See id. at ¶ 10. Accordingly, on March 3, 2000, the Appeals Council vacated ALJ Levin's decision and remanded the matter for another hearing, which was ultimately held before ALJ Hoppenfeld on April 18, 2001. See id. at ¶¶ 10-12.

the impairments listed in Appendix 1 of the applicable regulations, so as to qualify plaintiff as disabled. See 3/28/03 Decision [by ALJ Hoppenfeld] at 12 (attached to Complaint ("Compl.")); DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998). ALJ Hoppenfeld additionally determined that plaintiff, although not able to return to his former police position, was still capable of performing light work. See Bowes Decl. at ¶ 14. Plaintiff timely appealed, and, more than two years later, on June 23, 2005, the Appeals Council issued a notice denying the request for appeal. See id. at ¶ 15.

On July 8, 2005, plaintiff and his counsel entered into a new contingent-fee agreement for legal representation at the federal court level ("the 2005 Agreement"). See 7/8/05 Letter (attached as Ex. A to Bowes Decl.). Under the 2005 Agreement, which rescinded the 1994 Agreement, plaintiff again agreed to pay counsel twenty-five percent of any past-due benefits procured by him. See id. Subsequently, plaintiff filed suit in this Court asking for judicial review of ALJ Hoppenfeld's decision, pursuant to 42 U.S.C. § 405(g). See generally Compl. On July 25, 2007, Judge Garaufis reversed ALJ Hoppenfeld's decision and remanded the matter to the SSA for the sole purpose of calculating the amount of past benefits owed to plaintiff. See 7/25/07 Memorandum & Order. On September 17, 2007, the SSA issued a Notice of Award reflecting that plaintiff was entitled to $220,765.50 in back payments. See 9/17/07 Notice of Award (attached as Ex. B to Bowes Decl.).

The following month, plaintiff filed an application for fees under the EAJA and for approval of the 2005 Agreement pursuant to 42 U.S.C. § 406(b). See 10/25/07 Notice of Motion for Attorneys Fees. Defendant thereafter objected to both fee amounts as excessive.

See generally 12/3/07 Memorandum of Law in Partial Opposition to Plaintiff's Petition for Attorney's Fees ("Def. Mem."). On December 28, 2007, Judge Garaufis referred plaintiff's application to the undersigned magistrate judge. See 12/28/07 Order. With leave of the Court and defendant's consent, plaintiff filed a belated reply on February 1, 2008. See 2/1/08 Reply Memorandum in Support of Plaintiff's Motion for Attorney's Fees ("Pl. Reply"); see also 1/29/08 Order; 1/30/08 Letter [by Christopher J. Bowes].

## DISCUSSION

In the pending motion, plaintiff seeks the following relief: (1) an order compelling defendant to pay plaintiff, as a fee award under the EAJA, $14,380.07 for 86.05 hours of attorney time; and (2) judicial approval of the contingent-fee agreement granting plaintiff's counsel twenty-five percent of plaintiff's award of $220,765.50 in past-due benefits, or $55,191.38 in fees.[2] Plaintiff's counsel agree, as they must, that the smaller award -- here, the EAJA fees -- would offset plaintiff's liability for fees under the 2005 Agreement. See Memorandum of Law In Support of Plaintiff's Motion for Attorney's Fees ("Pl. Mem.") at 1, 8; Gisbrecht v. Barnhart, 535 U.S. 789, 796 (2002); Joslyn v. Barnhart, 389 F.Supp.2d 454, 457 (W.D.N.Y. 2005); Reyes v. Sec'y of Health & Human Servs., 807 F.Supp. 293, 297 (S.D.N.Y 1992). As detailed below, the Court approves the contingency award but reduces the EAJA fees payable by the government.

---

[2] In initially filing his fee application, plaintiff disputed the SSA's calculation of past-due benefits and stated his intention to appeal the calculation. See Bowes Decl. at ¶ 25. In his reply, however, plaintiff informed the Court that, after further review, and in light of plaintiff's election to receive early retirement benefits, he agrees with the SSA's calculation. See Pl. Reply at 8.

I.     **EAJA**

   A.    **Applicable Legal Standards**

The EAJA requires a district court to award fees and costs to prevailing parties in certain civil actions against the United States (including cases against the SSA) unless "the position of the United States was substantially justified or [] special circumstances make an award unjust." See 28 U.S.C. § 2412(d)(1)(A). The EAJA was designed to encourage those plaintiffs who might otherwise be deterred by the costs of litigation to defend against, or seek review of, unreasonable government action. See Sullivan v. Hudson, 490 U.S. 877, 883 (1989) (quoting S. Rep. No. 96-253, p.5 (1979)). A party requesting an award pursuant to the EAJA must apply within thirty days of final judgment[3] and submit with the application "an itemized statement from any attorney . . . representing or appearing on behalf of the party stating the actual time expended and the rates at which fees and other expenses were computed." See 28 U.S.C. § 2412(d)(1)(B). EAJA rates may not exceed $125 an hour unless the court determines that the cost of living or a special factor warrants an increased rate. See

---

[3] The EAJA defines a final judgment as one that is "final and not appealable." See 28 U.S.C. § 2412(d)(2)(G); Melkonyan v. Sullivan, 501 U.S. 89, 95 (1991) (contrasting the traditional definition of final judgment with the EAJA version). Accordingly, the thirty-day window is triggered when the time for the parties to appeal has expired, which is sixty days from entry of judgment. See Shalala v. Schaefer, 509 U.S. 292, 302 (1993); Melkonyan, 501 U.S. at 95. Pursuant to Rule 58 of the Federal Rules of Civil Procedure, entry of judgment is effective when set out "on a separate document" by the Clerk of the Court. See Fed. R. Civ. P. 58; Shalala, 509 U.S. at 302-03. In this case, the time to appeal expired on October 1, 2007, which was the first business day following the sixty-day appeal period, and thus, the thirty-day EAJA window closed on October 31, 2007. See 7/31/07 Clerk's Judgment; Shalala, 509 U.S. at 302-03. Therefore, defendant does not dispute that plaintiff's October 26, 2007 application for EAJA fees was timely.

28 U.S.C. § 2412(d)(2)(A); Gisbrecht, 535 U.S. at 796 n.4. After reviewing the application, the court may in its discretion reduce the award requested. See 28 U.S.C. § 2412(d)(1)(C).

Courts often reduce an EAJA award if counsel spent an unreasonable amount of time litigating the action. See, e.g., Scott v. Astrue, 474 F.Supp.2d 465, 467 (W.D.N.Y. 2007); Ferguson v. Apfel, 98-CV-3728 (DGT), 2000 WL 709018, at *4 (E.D.N.Y. Apr. 17, 2000); Cruz v. Apfel, 48 F.Supp.2d 226, 231 (E.D.N.Y. 1999). What is unreasonable depends on the specific factors of the case, including whether plaintiff's case presented novel issues of law or involved a complex set of facts. See, e.g., Scott, 474 F.Supp.2d at 466; Ferguson, 2000 WL 709018, at *2. Courts also take into account the number of hours typically expended in cases involving similar claims. See, e.g., Cruz, 48 F.Supp.2d at 231 (citing DiGennaro v. Bowen, 666 F.Supp. 426, 433 (E.D.N.Y. 1987) (collecting cases)). Courts in this Circuit enjoy "broad discretion" in deciding whether to reduce the number of allowable hours under the EAJA. See Aston v. Sec'y of Health & Human Servs., 808 F.2d 9, 11 (2d Cir. 1986); McKay v. Barnhart, 327 F.Supp.2d. 263, 270 (S.D.N.Y. 2004).

### B. Plaintiff's EAJA Fee Application

As an initial matter, defendant acknowledges that plaintiff is a prevailing party under the EAJA and that the United States was not substantially justified in its position. See Def. Mem. at 1-2. Defendant charges, however, that the number of hours claimed to have been worked by Robert Ungaro, Esq. ("Ungaro"), an S&U partner, and Christopher J. Bowes, Esq.

("Bowes"), who was brought into the case as counsel to the firm, is excessive.[4]  See id.

Plaintiff seeks compensation for 31.75 hours that Ungaro spent in the federal action, see Ungaro Time Records, and for 54.3 hours of work performed by Bowes.  See Bowes Time Records.

Defendant objects to several entries on Ungaro's time sheet, including, but not limited to, an allegedly excessive number of hours spent drafting the complaint, several entries relating to clerical tasks, and a portion of the charges involving status conferences with plaintiff.  See Def. Mem. at 3-4.[5]

Plaintiff is requesting reimbursement for approximately fifteen hours[6] that Ungaro spent

---

[4]  Both Ungaro and Bowes have calculated their fees based on hourly rates adjusted for cost of living pursuant to the Consumer Price Index, which at times yields rates of up to $45 in excess of the $125 statutory rate.  See [Time Records of Robert Ungaro] ("Ungaro Time Records") (attached as Ex. E to Bowes Decl.); [Time Records of Christopher J. Bowes] ("Bowes Time Records") (attached as Ex. F to Bowes Decl.); [SSA's EAJA Rates Based on Consumer Price Index] (attached as Ex. G to Bowes Decl.)  Defendant does not challenge these cost-of-living EAJA hourly rates, but rather objects to the number of hours claimed by plaintiff's counsel.  See generally Def. Mem.  The Court sees no reason to reject the requested adjusted rates.

[5]  In addition, Ungaro -- unlike Bowes -- billed in fifteen-minute increments rather than the standard six-minute increments.  Although fifteen-minute increments are not unreasonable *per se*, see Corbett v. Guardian Worldwide Moving Co., 164 F.R.D. 323, 330 (E.D.N.Y. 1995), Ungaro's time sheets are necessarily less precise than they could be, and may be reduced on that basis.  See La Barbera v. Pass 1234 Trucking, Inc., 04-CV-1364, 2007 WL 2908175, at *7 (E.D.N.Y. Sept. 28, 2007) (reducing hours billed by 15% where method of billing was "not entirely accurate since [attorneys'] time is divided into fifteen minute increments instead of the more traditional six minutes.").

[6]  This fifteen-hour estimate includes the four hours Ungaro claimed on July 17, 2005 for finalizing the "brief."  As defendant suggests, the context of the surrounding time entries indicates that the referenced brief is in fact the complaint, which plaintiff filed with the Court on July 28, 2005.  See Def. Mem. at 3; Nicholson v. Williams, 00-CV-2229 (JBW), 2004 WL

(continued...)

researching and drafting the complaint. See Ungaro Time Records. The Court agrees with defendant that that amount of time is somewhat excessive. Of the complaint's forty pages, thirty-four consist of exhibits relating to the prior administrative proceedings.[7] See generally Compl. The six remaining pages amount to little more than a conventional Social Security complaint with a general recitation of the facts and prior proceedings. See Compl. at 1-6.

As for defendant's objection to the inclusion of clerical tasks in Ungaro's time records, the Court concurs that some entries appear to be clerical and thus should not be billed at an attorney rate, if at all. Compare Barriger v. Bowen, 673 F.Supp. 1167, 1170 (N.D.N.Y. 1987) (refusing to award EAJA hours for mailing letters and serving parties with complaint because "this work is essentially clerical in nature"), with Camacho v. Sec'y of Health & Human Servs., 758 F.Supp. 91, 92 (D.P.R. 1991) (reducing EAJA rate for filing documents to $25 per hour), and Cruz, 48 F.Supp.2d at 230 (awarding, under the EAJA, $75 per hour for paralegals and student interns); see also Nicholson, 2004 WL 4780498, at *20 (reducing fee rate under civil rights fee-shifting statute to $25 an hour for administrative work); Loper v.

---

[6](…continued)
4780498, at *15 (E.D.N.Y. Apr. 5, 2004) (noting that vague time entries "must be viewed in the context of the surrounding entries"). In his reply, plaintiff does not directly address this confusion but does seem to suggest that these four hours should be attributed to the complaint. See Pl. Reply at 4 ("Another 4 hours was expended editing the complaint and assembling the complaint for filing.").

[7] Although Ungaro represented plaintiff during his administrative hearings and appeals for more than a decade, plaintiff understandably is not seeking EAJA fees for these administrative efforts, as they arose prior to the federal action. See Pl. Mem. at 1; cf. Hudson, 490 U.S. at 892-93 (finding EAJA's "civil action" includes administrative proceedings *on remand* from district court with continuing jurisdiction over the case).

New York City Police Dep't, 853 F.Supp. 716, 720 (S.D.N.Y. 1994) (reducing rates for clerical work in civil rights case from $250 an hour to $70-to-$85 an hour).

For instance, plaintiff requests compensation for fifteen minutes Ungaro spent receiving and reviewing a certified mail receipt from the U.S. Postal Service, as well as for time spent faxing and mailing various documents. See Ungaro Time Records at July 17, 2005; August 1, 2005; August 12, 2005; and October 11, 2007; see also Pl. Reply at 6 (conceding that one hour billed for August 1, 2005 "reflects clerical work" and asking that "such time be billed at one-half the EAJA rate."). Further, plaintiff requests fees for "legal research on Pacer Service Center on [the] case," which refers to monitoring the court docket on the Electronic Case Filing System ("ECF"). See Pl. Reply at 7; see also Ungaro Time Records at August 2, 2005; September 9, 2005. Contrary to plaintiff's contention, see Pl. Reply at 7, monitoring a case's progress on ECF cannot be characterized as the non-delegable responsibility of the attorney. To be sure, an attorney is ultimately responsible for any action taken in his or her case by a paralegal or assistant; nevertheless, it does not follow that the action, if clerical in nature, should be billed at an attorney rate. Accordingly, the clerical activities previously mentioned, including monitoring ECF, are not reimbursable at attorney rates.[8]

---

[8] Because Ungaro's time records include so-called block entries, containing descriptions of more than one task for a single time entry, the Court cannot calculate precisely how much time involved clerical activities. A reasonable estimate would be under two hours. However, the use of block entries is yet another basis for reducing counsel's EAJA award. See Hensley v. Eckerhart, 461 U.S. 424, 441 (1983); New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983) (where adequate contemporaneous records have not been kept, the court should not award the full amount of fees requested); Skold v. Am. Int'l Group, Inc., No. 96 Civ. 7137 HB, 1999 WL 672546, at *2 (S.D.N.Y. Aug. 25, 1999)

(continued…)

Defendant additionally objects to the numerous client telephone status conferences included as part of Ungaro's time charges. See Def. Mem. at 4. However, as the majority of these conferences occurred briefly once every few months, the Court concludes that the charges are not unreasonable.

Regarding Bowes' time sheet, defendant generally objects to the 45.8 hours Bowes spent preparing plaintiff's cross-motion on the pleadings, including 5.7 hours familiarizing himself with the facts of the case.[9] See Def. Mem. at 4-5. Bowes drafted a substantive twenty-nine-page memorandum of law that ultimately persuaded Judge Garaufis to rule in plaintiff's favor. See 3/10/07 Cross-Motion. Nevertheless, considering that the *total* average number of hours spent on a typical Social Security case is between twenty and forty hours, see, e.g., Cruz, 48 F.Supp.2d at 231 (noting routine Social Security benefit cases require twenty-to-forty hours of attorney time); Scott, 474 F.Supp.2d at 466 (same); Ferguson, 2000 WL 709018, at *2 (same), this Court is not persuaded that 45.8 hours for a memorandum of law is entirely reasonable, even where, as here, plaintiff secured a reversal and not simply a remand.

---

[8](…continued)
(reducing fees by ten percent where attorneys submitted several time entries consisting of multiple tasks, as court was unable to assess the reasonableness of the time spent on each task); Wilder v. Bernstein, 975 F.Supp. 276, 286 (S.D.N.Y. 1997) (attorneys should not "lump several services or tasks into one time sheet entry because it is then difficult . . . for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided . . . .") (internal quotations and citations omitted).

[9] In complaining that Bowes spent 54.3 hours handling the motion, see Def. Mem. at 4, defendant fails to exclude 1.8 hours Bowes claims for reviewing Judge Garaufis' decision and 6.7 hours for preparing the instant fee application. See Bowes Time Records at July 27, 2007; October 24, 2007. Thus, Bowes claims only 45.8 hours for the cross-motion.

Plaintiff's case presented no novel issue of law nor did it involve a particularly complex set of facts. See Scott, 474 F.Supp.2d at 467 (finding that complex medical issue – a brain tumor that affected "hormone production, growth and other body functions" – justified awarding fees for 51 hours in Social Security case, including 38 of the 42 requested hours for preparing a memorandum of law); Hiciano v. Apfel, 98-CV-4037 (DLC), 2002 WL 1148413, at *2 (S.D.N.Y. May 29, 2002) (finding legal issue involving appropriate deference to treating physician and plaintiff's complaints of pain not novel in "unremarkable case" involving back injury); Ferguson, 2000 WL 709018, at *4; see also Cruz, 48 F.Supp.2d at 231 (reducing hours from 16.3 to 10 for attorney, and from 100 to 50 for non-attorney assistants). Moreover, defendant should not be responsible for the full 5.7 hours that Bowes spent familiarizing himself with the prior proceedings, which had been handled by Ungaro. See Dionne v. Barnhart, 230 F.Supp.2d 84, 87-88 (D. Me. 2002) (reducing time spent by substitute attorney familiarizing himself with the case).

The decision in *Ferguson* is illustrative. There the plaintiff sought SSD benefits based on a back injury she suffered in a car accident. See Ferguson, 2000 WL 709018, at *1. When the administrative law judge presiding over her case found that her condition did not equal any listed impairment in Appendix 1 of the regulations and that plaintiff was capable of performing sedentary work, the plaintiff sought judicial review. See id. In discussing what fees were appropriate under the EAJA, the court concluded that the case "did not present any extraordinarily complicated legal or factual issues" and thus reduced the requested 48.5 hours to 37.75 hours. See id. at *4. Here, for the work performed by his two attorneys, plaintiff is

requesting 86.5 hours in a case involving facts and law similar to Ferguson. The EAJA does not entitle plaintiff's counsel to "unlimited largess from the government." Cruz, 48 F.Supp.2d at 229.

In conclusion, the Court finds that the total hours Ungaro and Bowes claim under the EAJA are excessive and, in the case of certain clerical tasks performed by Ungaro, are billed at an inappropriate rate. Accordingly, the Court reduces Ungaro's EAJA time charges from $5,149.07 to $3,500.00, and reduces Bowes' from $9,231.00 to $7,500.00. Cf. Aston, 808 F.2d at 11 (noting that lower court "need not have scrutinized each action taken or the time spent on it" to reduce EAJA award); Blizzard v. Astrue, 496 F.Supp.2d 320, 324 (S.D.N.Y. 2007) ("A court is not required to articulate its judgment as to reasonableness in terms of a mathematical formula."); Nicholson, 2004 WL 4780498, at *17 (noting court need not set forth line-by-line review of itemized time sheet before reducing fee).

**II.     Contingent Fee Under 42 U.S.C. § 406(b)**

Section 406(b) of the Social Security Act allows a court to award a reasonable contingent fee to counsel representing a successful claimant in a federal action, but that fee may not exceed twenty-five percent of the total past-due benefits owed to the claimant. See 42 U.S.C. § 406(b). Unlike a traditional fee-shifting statute, the fee is paid out of, not in addition to, the past-due benefits. See id.; Gisbrecht, 535 U.S. at 795. Section 406(b) does not displace any contingent-fee arrangement between the claimant and attorney, but rather sets the ceiling of any such agreement at twenty-five percent of the past-due benefits. See id. at 792-93.

A contingent-fee agreement set for twenty-five percent or less is not, however,

presumptively reasonable under section 406(b). See id. at 807-08; Benton v. Comm'r of Social Security, 03-CV-3154, 2007 WL 2027320, at *1 (E.D.N.Y. May 17, 2007). Rather, as the Supreme Court made clear in Gisbrecht, 535 U.S. at 807, courts have an independent duty to review the agreement for reasonableness. In performing this duty under Gisbrecht, courts examine (1) the character of the representation and the results achieved by the representative; (2) whether the attorney is responsible for any delay such that he or she might profit from the accumulation of additional past-due benefits; and (3) whether the requested fee award is large in comparison to the amount of time spent on the case. See id. at 808; Blizzard, 496 F.Supp.2d at 323; Benton, 2007 WL 2027320, at *2; Joslyn, 389 F.Supp.2d at 456. Courts also consider "whether there has been fraud or overreaching" on counsel's part in securing a contingent-fee agreement. See Wells v. Sullivan, 907 F.2d 367, 372 (2d Cir. 1990).

Here, the 2005 Agreement between plaintiff and S&U is for twenty-five percent of the past-benefits owed to plaintiff, and thus, it falls within the limits of section 406(b). Turning to the *Gisbrecht* factors, defendant does not challenge either the character of the representation by plaintiff's counsel or the very favorable results their efforts yielded. See generally Def. Mem. Defendant likewise does not allege, nor does the record suggest, that plaintiff's counsel engaged in fraud or overreaching, or had a hand in contributing to the substantial delays to which plaintiff's claim was subjected at the administrative level. See id. In fact, in its 2000 remand order, the Appeals Council apologized to plaintiff for having caused the delay. See Bowes Decl. at ¶ 14. Defendant does argue, however, that the size of the award – twenty-five percent of $220,765.50, or $55,191.38 – would constitute a windfall to plaintiff's counsel in comparison with the amount of time counsel spent on the case.

Recognizing the lack of precision involved in making such a comparison, courts have struggled in assessing this particular factor. See Blizzard, 496 F.Supp.2d at 324 n.2 (noting that the dissent in Gisbrecht predicted "[t]he difficulty of the court's task"); Ellick v. Barnhart, 445 F.Supp.2d 1166, 1168 (C.D. Cal. 2006) (surveying 43 post-Gisbrecht cases and finding "considerable divergence and scant evidence of any uniform rule of law") (internal quotations omitted); Joslyn, 389 F.Supp.2d at 456 (noting there is "no clear set of criteria for determining when an award would result in a windfall"). Some courts in this circuit have assessed the "windfall" factor by taking into account whether counsel worked efficiently and offered submissions and arguments that were other than boilerplate. See, e.g., Blizzard, 496 F.Supp.2d at 323 (quoting Joslyn, 389 F.Supp.2d at 456-57). Many courts consider the de facto per-hour rate, determined by dividing the fee sought by the number of hours claimed. See Ellick, 445 F.Supp.2d at 1169 n.8 (collecting cases) [10]

In this case, plaintiff's counsel achieved a highly favorable result for their client but, as previously noted, the issues were not that complex and the hours expended were not entirely reasonable. Counsel put in for 86.5 hours, which the Court found to be an excessive number

---

[10] That most courts focus on a de facto hourly rate in their reasonableness inquiry suggests that the lodestar method, or, as the Second Circuit prefers, "presumptively reasonable fee" approach, continues to influence these types of Social Security fee cases, despite the fact that the Gisbrecht Court explicitly rejected the lodestar method in the context of section 406(b). See Gisbrecht, 535 U.S. at 798-99; Lapatra v. Astrue, 05-CV-6200, -- F.Supp.2d --, 2008 WL 125462, at *2 (W.D.N.Y. Jan. 9, 2008) (noting that government's challenge to contingent fee as resulting in high hourly rate conflicts with *Gisbrecht'*s rejection of the lodestar method); Thomas v. Barnhart, 412 F.Supp.2d 1240, 1244 (M.D. Ala. 2005) (declining to consider hourly rate in light of Gisbrecht).

of hours for this type of case. See *supra* pp. 8, 10-11. The reasonableness of the time spent has implications in evaluating the de facto hourly rate. Assuming that about 65 hours would be a more reasonable amount of time, that would yield a per-hour rate of $849.09. Although this rate is high,[11] courts in this circuit have frequently approved SSA contingent-fee awards that yielded comparable or even higher rates. See, e.g., Blizzard, 496 F.Supp.2d at 323-25 ($705); Briem v. Barnhart, 05-CV-6219, 2006 WL 3374955, at *1 (W.D.N.Y. Nov. 17, 2006) ($1300); Joslyn, 389 F.Supp.2d at 455-56 ($896). Moreover, although section 406(b), by its terms, deals exclusively with fees arising out of the federal court action, as compared to those incurred at the administrative level,[12] courts examining the *Gisbrecht* factors have taken into account "the amount of time and effort the attorney expended at the administrative level." See Joslyn, 389 F.Supp.2d at 457; Benton, 2007 WL 2027320, at *2; see also Mudd v. Barnhart, 418 F.3d 424, 428 (4th Cir. 2005) (finding efforts made at administrative level gave court "a better understanding" of factors related to reasonableness inquiry, including "risks involved"); Lapatra, -- F.Supp.2d --, 2008 WL 125462, at *2 n.1; Briem, 2006 WL 3374955, at *1; Ellick, 445 F.Supp.2d at 1169-70 & n.9 (collecting cases). Taking into account the 125.25 hours of work that S&U performed at the administrative level, the de facto rate is reduced to $ 290.10. See [Ungaro Time Records for Administrative Action] (attached as Ex.

---

[11] Counsel have not provided sworn affidavits listing their normal hourly rates, nor has the Court asked them to do so. See Blizzard, 496 F.Supp.2d at 324.

[12] A separate statutory section deals with contingent-fee awards for work performed at the administrative level. See 42 U.S.C. § 406(a). When plaintiff was denied relief at the administrative level, S&U agreed that the 1994 Agreement was rescinded, see *supra* p. 3, and thus this case does not implicate section 406(a).

-15-

H to Bowes Decl.).

In any event, policy is more persuasive than hourly rate arithmetic. Plaintiff and his counsel freely entered into a twenty-five percent contingent arrangement on two occasions – in 1994 and in 2005. The Court finds no compelling reason to override the intent of the contracting parties. See Wells, 907 F.2d at 371 ("We must recognize, however, that a contingency agreement is the freely negotiated expression both of a claimant's willingness to pay more than a particular hourly rate to secure effective representation, and of an attorney's willingness to take the case despite the risk of nonpayment."). "[A] reduction in [an] agreed-upon contingency amount should not be made lightly." Blizzard, 496 F.Supp.2d at 324. Given both the significant risk S&U assumed in filing a lawsuit based on a claim that had twice been rejected at separate hearings at the administrative level, see, e.g., Briem, 2006 WL 3374955, at *1, as well as the "interest in assuring attorneys continue to represent clients such as the plaintiff," this Court finds the twenty-five percent rate not unreasonable. See Joslyn, 389 F.Supp.2d at 457 (citing Gisbrecht, 535 U.S. at 805); see also Wells, 907 F.2d at 371 ("[T]he best indicator of the 'reasonableness' of a contingency fee in a social security case is the contingency percentage actually negotiated between the attorney and client, not an hourly rate . . . .").

## CONCLUSION

In conclusion, the Court awards plaintiff $11,000 in fees under the EAJA (consisting of $3,500 for Ungaro's time charges and $7,500 for Bowes' time charges). Additionally, the Court rules that the 2005 Agreement between plaintiff and his counsel is reasonable. Accordingly, plaintiff's counsel is entitled to twenty-five percent of the past-due benefits, or $55,191.38.

Any objections to this Memorandum and Order must be filed with Judge Garaufis on or before March 18, 2008. Failure to file objections in a timely manner may waive a right to appeal the District Court order.

**SO ORDERED.**

Dated: Brooklyn, New York
March 4, 2008

**ROANNE L. MANN
UNITED STATES MAGISTRATE JUDGE**